2023 IL App (1st) 231807B

No. 1-23-1807B

Opinion filed December 7, 2023

FIFTH DIVISION

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 544 |
| | ) | |
| JAMES WHITMORE, | ) | Honorable |
| | ) | Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge presiding. |

---

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Lyle and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant James Whitmore appeals the circuit court's September 21, 2023 order denying him pretrial release. This appeal raises three issues under the Pretrial Fairness Act: (1) Did the circuit court err in holding that section 6.1 of the Act applied to Whitmore when he had been ordered to be released on bond prior to the effective date of the Act but was still detained because he had not posted monetary bail? (2) Did the circuit court err in holding that the State's petition to deny pretrial release was timely? (3) Did the circuit court abuse its discretion in denying Whitmore pretrial release? For the following reasons, we hold that the circuit court did not err in concluding

that the Act applies to Whitmore and that the State's petition was timely. We further hold that the circuit court did not abuse its discretion in denying Whitmore pretrial release.

¶ 2    James Whitmore was arrested and charged with possession of an explosive or incendiary device (720 ILCS 5/20-2(a)) and arson (720 ILCS 5/20-1(a)(1)). He has remained in police custody since his arrest on December 13, 2022. He first appeared before a judge the following day where bond was set at $1,000,000-D, which required him to post $100,000 and submit to electronic home monitoring and GPS as conditions of bond. When the Pretrial Fairness Act went into effect on September 18, 2023 (*Rowe v. Raoul*, 2023 IL 129248, ¶ 52), Whitmore petitioned to remove the financial conditions of his pretrial release. The following day, the State filed a petition requesting a pretrial detention hearing (725 ILCS 5/110-6.1 (West. Supp. 2023)), and Whitmore moved to strike the petition, arguing that it was untimely. The trial court denied Whitmore's motion and proceeded to the detention hearing, where it determined that Whitmore should remain detained. Whitmore timely filed a notice of appeal. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Oct. 19, 2023).

¶ 3    The Pretrial Fairness Act restructured the procedures in Illinois for pretrial release of criminal defendants awaiting trial. See 725 ILSC 5/110-1 *et seq.* (West Supp. 2023). The Act abolished the requirement for monetary bail (725 ILCS 5/110-1.5 (West Supp. 2023)) and created a process for determining when pretrial release is improper. 725 ILCS 5/110-5 (West Supp. 2023). As a general rule, courts now presume "that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release ***." 725 ILCS 5/110-2 (West Supp. 2023). However, the Act grants the State the ability to file a verified petition for the denial of pretrial release under certain circumstances. 725 ILCS 5/110-6.1.

¶ 4                                              1.

¶ 5      Whitmore argues that section 110-6.1 of the Act does not apply to him because he was a person "who remain[ed] in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security ***." 725 ILCS 5/110-7.5(b) (West Supp. 2023). Whitmore contends that the plain language of the statute does not permit the State to petition to detain defendants who are situated as Whitmore is here. Whitmore further asserts that, even if section 110-6.1 applies to him, the State is nevertheless barred because the State is limited to filing a petition either (1) without notice "at the first appearance before a judge" or (2) with notice "within the 21 calendar days *** after arrest and release of the defendant ***." 725 ILCS 5/110-6.1(c). Both of these issues involve matters of statutory interpretation that we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 6      When interpreting a statute, our fundamental objective "is to ascertain and give effect to the legislature's intent." *People v. Newton*, 2018 IL 122958, ¶ 14. To do this, we look to "the language of the statute, given its plain and ordinary meaning" as "[t]he most reliable indicator ***." *Id.* However, it is not enough to read a provision in isolation, "[t]he statute should be evaluated as a whole, with each provision construed in connection with every other section." *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 48. If the language is clear, "we must apply the statute as written without resort to other tools of construction." *Id.* But where the statute is ambiguous, we "may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims." *Taylor*, 2023 IL 128316, ¶ 45 (quoting *People v. Pullen*, 192 Ill. 2d 36, 42 (2000)). Additionally, "we presume that, in enacting the statute, the legislature did not intend to produce absurd, inconvenient, or unjust

results." *Id.*

¶ 7        Whitmore's argument focuses on the language in subsection 110-7.5(b) of the Act that provides that "any person who remains in pretrial detention after having been ordered released from pretrial conditions, including the condition of depositing security, *shall be entitled to a hearing* under subsection (e) of Section 110-5." (Emphasis added.) Under certain circumstances, subsection 110-5(e) requires a court to "reopen the conditions of release hearing" but it does not provide for denial of pretrial release. Whitmore concludes that the mandatory language "shall be entitled" demonstrates that the circuit court may do no more than reconsider the conditions of pretrial release. However, subsection (a) of section 7.5 provides "[t]his Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 ***." Thus, the Act makes clear that, while a hearing under subsection 110-5(e) is normally compulsory, this requirement does not preclude the State's ability to seek denial of pretrial release.

¶ 8        Whitmore argues further that the language of subsection (a) applies only to subsection (a) and not to the rest of section 110-7.5. But the section clearly distinguishes between "subsections" and "sections" throughout. For instance, in subsection (b) the Act provides that "any person, not subject to *subsection (b)* *** shall be entitled to a hearing ***." (Emphasis added.) 725 ILCS 5/110-7.5(b). The provision explicitly discusses the specific subsection to which it refers. Conversely, subsection (c) reads "[t]he provisions of this *Section* shall apply to all monetary bonds ***." (Emphasis added.) 725 ILCS 5/110-7.5(c). The use of a materially different term suggests that the meaning of the terms should also be materially different. *In re Marriage of Paris*, 2020 IL App (1st) 181116, ¶ 38 ("An elementary rule of construction is that when the legislature uses certain words in one instance and different words in another, it intends a different meaning.").

More importantly, however, this provision would be meaningless if it were understood to refer only to subsection (c). It can only be understood in the larger context of the section as a whole. Further, we will not interpret "Section" to have one meaning in one provision and another meaning in a separate provision of the same section of the Act. See *People v. Ashley*, 2020 IL 123989, ¶ 36 ("where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed."). Thus, "Section" as used in subsection (a) refers to all of section 110-7.5 and not to only subsection (a). Therefore, the State may petition for the denial of pretrial release of defendants who were ordered released on bond but were still detained when the Act went into effect.

¶ 9                                                    2.

¶ 10    The next question is whether the circuit court erred in finding that the timing requirement of subsection 110-6.1(c) did not apply here. 725 ILCS 5/110-6.1(c). The Act requires the State to file a petition either without notice "at the first appearance before a judge" or with notice "within the 21 calendar days *** after arrest and release ***." *Id.* Whitmore argues that this provision is clear and unambiguous and that his first appearance in court occurred on December 14, 2022, nearly a year before the State filed its petition, and he has yet to be released. Thus, he contends that the State is too late and is barred from asking the circuit court to deny Whitmore's pretrial release. However, reading the statute in its broader context makes clear that Whitmore's reading cannot be correct.

¶ 11    First, the Act clearly contemplates section 110-6.1 being used by the State to seek the detention of defendants who had been granted pretrial release with cash bail prior to the Act becoming effective. See 725 ILCS 5/110-7.5(a) ("This Section shall not limit the State's

Attorney's ability to file a verified petition for detention ***."). This language would be rendered superfluous if we were to determine that subsection 110-6.1(c)'s timing requirements strictly apply to petitions to detain defendants arrested prior to the Act's effective date. See *People v. Marshall*, 242 Ill. 2d 285, 292 (2011) ("We construe the statute to avoid rendering any part of it meaningless or superfluous."). Every defendant who was ordered to be released on monetary bond prior to trial has already had his first appearance before a judge. Nearly every defendant who was released on monetary bond has already been released for more than the 21-day limit of the statute. Thus, Whitmore's reading of the timing requirements of subsection 110-6.1(c) would result in a near total limit on "the State's Attorney's ability to file a verified petition for detention"—a result contrary to the Act's express provision. 725 ILCS 5/110-7.5(a). Furthermore, one stated purpose of the Act is to authorize "the court, upon motion of a prosecutor, to order pretrial detention of the person under Section 110-6.1 when it finds clear and convincing evidence that no condition or combination of conditions can reasonably ensure the effectuation of [the safety of the community and the individual's appearance in court]." 725 ILCS 5/110-2(e) (West Supp. 2023). Whitmore's interpretation would require mandatory release of every defendant given bond before the effective date of the Act, while severely limiting the trial court's ability to fully evaluate some defendants because it was impossible for the State to bring a petition any earlier. This result would not "give effect to the legislature's intent." *Newton*, 2018 IL 122958, ¶ 14.

¶ 12 Moreover, Whitmore's reading of the statute creates a distinction between defendants who were able to post monetary bond before it was abolished and defendants who could not. That is, Whitmore's argument would mean that defendants who were released from detention more than 21 days before the Act went into effect cannot be hailed back into court by the State for a detention

hearing, but the State may petition the circuit court for a detention hearing for defendants who could not afford to pay bail and are now released under the Act. See 725 ILCS 5/110-6.1(c) (providing that the State may bring a petition to deny pretrial release "within the 21 calendar days *** after arrest and release of the defendant ***."). The disparate treatment of individuals in our justice system based solely on economic status was precisely the issue that the legislature sought to address when reforming pretrial release. See *Rowe*, 2023 IL 129248, ¶¶ 3-4.

¶ 13    There is disagreement in the appellate court on how to resolve this apparent paradox. The Fourth District circumvented the timing requirement by holding that

> "[f]or defendants arrested and detained before the Act's effective date who remained in detention after being granted pretrial release on the condition that they pay monetary bail, a motion to deny pretrial release following the Act's implementation operates as a motion to increase the pretrial release conditions to the furthest extent." *People v. Jones*, 2023 IL App (4th) 230837, ¶ 17.

While this decision avoids requiring the State to abide by an impossible timing requirement, the reasoning is quite expansive. That is, if a petition to deny pretrial release is effectively only a petition "to increase the pretrial release conditions to the furthest extent" under subsection 110-6(g), then the timing requirement of subsection 110-6.1(c) is rendered superfluous.

¶ 14    In contrast, the Fifth District has held that subsection 110-6.1(c)'s timing requirement applies to defendants who were previously ordered to be released on bail but that the State *could* seek pretrial detention through a hearing under subsection 110-5(e) ("If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention."). See *People v. Rios*, 2023 IL App (5th)

230724, ¶¶ 12, 17; *People v. Vingara*, 2023 IL App (5th) 230698, ¶¶ 18, 22. This result is in tension with the Act's language suggesting that section 110-6.1 is the method by which a court may detain a defendant. See 725 ILCS 5/110-2(e) ("This Section shall be liberally construed to effectuate the purpose of *** authorizing the court, upon motion of a prosecutor, to order pretrial detention of the person under Section 110-6.1 ***.").

¶ 15     To give meaning to all the provisions in the Act, it seems that the timing requirement must be read to allow the State to petition to detain defendants who were ordered to be released on bond prior to the Act's effective date. Consequently, for individuals detained prior to the effective date of the Act who elect to seek relief under the Act—and only for such individuals—the State may file a petition for the denial of pretrial release "at the first appearance before a judge" after the effective date of the Act. 725 ILCS 5/110-6.1(c).

¶ 16     Here, the State petitioned to deny Whitmore pretrial release after Whitmore moved for relief from the financial conditions of his release. The hearing on Whitmore's motion was his first appearance before a judge since the Act became effective. The State filed its petition on the same day as the hearing; however, it was filed before the hearing, not "at" the hearing. Nonetheless, the petition was filed to be heard "at the first appearance before a judge." The Act's timing requirement is meant to prevent the State from having an unlimited window in which to hail defendants into court to determine whether they should be denied pretrial release. The State merely filing a petition early does not implicate this concern. It does not unfairly prejudice defendants. If anything, the advance notice provides them with a better opportunity to prepare a response. Therefore, the trial court did not err in hearing the State's petition.

¶ 17                                    3.

¶ 18    Whitmore next argues that, regardless of the Act's application to him, the State failed to show by clear and convincing evidence that he posed a "real and present threat to the safety of any person" or a risk of "willful flight" that "no condition or combination of conditions *** can mitigate ***." 725 ILCS 5/110-6.1(e)(2), (3). Illinois courts "have historically reviewed bail appeals *** using an abuse of discretion standard." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9).[1] Therefore, absent a legislative mandate intended to disrupt this precedent, abuse of discretion remains the proper standard of review under the amended Act. A circuit court abuses its discretion when its decision is "arbitrary, fanciful or unreasonable" or when "no reasonable person would agree with the position adopted by the trial court." (Internal quotation marks omitted.) *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 19    Under the Act, "defendants shall be presumed eligible for pretrial release" and the burden is on the State to prove by clear and convincing evidence that the defendant should not be released. 725 ILCS 5/110-6.1(e).[2] To meet this burden, the State must first show that the defendant committed a detainable offense. 725 ILCS 5/110-6.1(e)(1). Then, it must prove that "the defendant poses a real and present threat to the safety of any person or persons or the community, based on

---

[1] The Fifth District, alternatively, has held that this determination must be reviewed against the manifest weight of the evidence. *Vingara*, 2023 IL App (5th), ¶ 10.

[2] The prior bail law provided that "[a]ll persons shall be bailable before conviction" with some exceptions and that the State bore the burden of proof if it opposed bail. 725 ILCS 5/110-4(a), 110-4(c) (West 2022) (repealed 2023). In fact, the prior law even supplied the clear and convincing evidence quantum of proof. 725 ILCS 5/110-6.1(c)(2) (West 2022) (amended 2023). These provisions in the new law do not suggest a legislative intent to change our standard of review particularly since the Illinois Supreme Court has held that the "abuse of discretion standard is not tied to any quantum of proof." *People v. Vincent*, 226 Ill. 2d 1, 17 n.5 (2007).

the specific articulable facts of the case \*\*\*." *Id.* § 5/110-6.1(e)(2). If the State can satisfy these requirements, then it must demonstrate that "no condition or combination of conditions" could mitigate "(i) the real and present threat to the safety of any person or persons or the community" or "(ii) the defendant's willful flight." *Id.* § 5/110-6.1(e)(3).

¶ 20    At Whitmore's detention hearing, the State proffered the following. In the early morning hours of December 8, 2022, surveillance cameras recorded a blue pick-up truck driving slowly past a house before turning onto a street at the end of an alley. Moments later, an individual could be seen walking toward the house from the direction that the pick-up truck had gone. The individual was visibly limping, had light gray hair, and was wearing a jacket, but the camera never caught his face. He was carrying a large object which he placed beneath a vehicle parked in the driveway in front of the house. The individual then ignited the object and ran. The object exploded, causing significant damage to the vehicle. Shortly thereafter, the blue pick-up truck could be seen speeding away from the scene.

¶ 21    When the police arrived they discovered that the bomb was composed of a bundle of commercial grade fireworks. The police also found a bottle of Dollar General brand lighter fluid in the alley where the individual was seen running after planting the explosive. The victim identified Whitmore as the person in the video and told the police that the blue truck in the video belonged to him. Whitmore and the victim had a history together spanning roughly 20 years, including a sporadic romantic relationship. In late 2022, the victim ended the relationship, but Whitmore wanted to rekindle the romance. He sent letters to the victim, which included $1,000, in an attempt to win her back. The victim rejected Whitmore's advances and returned the money. The

last time that the two spoke was October 31, 2022, just over a month before the victim's car was bombed.

¶ 22     With this information, the police obtained and executed a search warrant for Whitmore's home. They found two cardboard boxes there that contained bundles of commercial grade fireworks. They also found a bottle of Dollar General brand lighter fluid. Whitmore was subsequently placed under arrest. At the time of his arrest, he was wearing a jacket consistent with the jacket the individual was wearing in the surveillance video. Police also noted that the jacket smelled like lighter fluid.

¶ 23     In response, Whitmore argued that he had not been provided with any discovery that would indicate that the explosion was caused by fireworks. Whitmore also noted that the fire department initially ruled that the explosion was accidental. Whitmore contends that the person in the video appears to be half-a-foot to a foot taller than him and that, when the individual fled from the scene, he was running in a manner that Whitmore could not because Whitmore is 55 years old, has a limp, and suffered a stroke some time before the incident. Additionally, there were no eyewitnesses and only the victim identified Whitmore as the person in the video.

¶ 24     Based on the proffered facts, the circuit court could, within its discretion, conclude as it did—that Whitmore presented a real threat to the community that no conditions of pretrial release could mitigate. "The term 'discretion' implies the absence of a hard-and-fast rule." *The Styria v. Morgan*, 186 U.S. 1, 9 (1902). An abuse of discretion occurs where a trial judge acts "arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[s] the bounds of reason and ignore[s] recognized principles of law." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991). Weighing the factors implicated in setting the

conditions of pretrial release has always been entrusted to the discretion of the trial judge. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. The Pretrial Fairness Act does not change this and by its plain language requires that trial judges make individualized determinations based on a weighing of all of the relevant factors. 725 ILCS 5/110-6.1(f)(7) ("Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention."). Nothing in the Act authorizes a reviewing court to reweigh the factors at play. Indeed, "[r]eview for abuse of discretion is proper when the trial court is called upon to exercise its equitable powers or when it must, for lack of a better phrase, make a judgment call." (Citation omitted.) *People v. Chambers*, 2016 IL 117911, ¶ 75

———————————————

¶ 25    The September 21, 2023 order of the circuit court of Cook County is affirmed.

¶ 26    Affirmed.

---

***People v. James Whitmore*, 2023 IL App (1st) 231807B**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CR-544; the Hon. Steven G. Watkins, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell and Kathryn Pelech, of Law Office of the Cook County Public Defender, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Leslie Billings, Assistant State's Attorney, of counsel), for the People. |