2024 IL App (1st) 232070-U

No. 1-23-2070B

Second Division
January 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 23 CR 10656 |
| v. | ) | |
| | ) | |
| ROSS NUNEZ, | ) | Honorable |
| | ) | Joanne F. Rosado |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not abuse its discretion in granting the State's petition for pretrial detention.

¶ 2    Defendant Ross Nunez appeals from an order of the circuit court denying him pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), commonly (but unofficially) known as the Pretrial Fairness Act. On appeal,

defendant argues that the State failed to prove he qualified for pretrial detention in various ways. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 18, 2023, defendant was arrested and charged with the aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6) (West 2022)). The State filed a verified petition for pretrial detention, arguing that defendant posed a real and present threat to the safety of the community (725 ILCS 5/110-6.1(a)(1) (West 2022)) and a high risk of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8) (West 2022)). According to the State's petition, this case was the third time that defendant had been charged with AUUW since April 2022. The other two AUUW cases remained pending, and defendant had twice violated the terms of his release in those cases by being charged with AUUW. The State further alleged that defendant also violated the terms of his release in the previous cases by failing to appear in court on five occasions.

¶ 5     The circuit court held a detention hearing on October 17, 2023. There, by way of proffer, the State asserted that on the day of defendant's arrest, he was the driver of a vehicle involved in an accident. Defendant fled the scene on foot, leaving a passenger behind. The passenger described defendant to the police, who apprehended defendant near the scene of the accident. Police searched defendant upon his arrest and found a loaded Glock magazine on his person. In the vehicle that defendant had been driving, police also discovered a loaded revolver on the floorboard of the driver's seat and an empty gun case. Defendant had not been issued a Firearm Owners Identification Card or Concealed Carry License.

¶ 6     In mitigation, the defense noted that defendant was 21 years old, a high school graduate, and employed as a patient escort by Northwestern Medicine. He also had a child on the way and strong family support, as evidenced by his brother's presence in the courtroom. Defendant further

argued that the State could not prove his possession of the revolver because he was not in the vehicle when it was recovered, it could have shifted locations during the accident, and it was not compatible with the magazine allegedly found on his person. Finally, defendant argued that none of his firearm cases involved "anything violent," such as allegations that he brandished or fired a gun. Based on the foregoing, defendant requested that he be placed on electronic monitoring.

¶ 7    After hearing argument, the circuit court found that the State had carried its burden of proof under the Code in showing that (1) the proof was evident and the presumption great that defendant committed AUUW, (2) defendant posed a real and present threat to the safety of the community, and (3) there was no condition or combination of conditions of pretrial release that could mitigate that danger. Thus, the court granted the State's petition for pretrial detention.

¶ 8    This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    Through the passage of Public Act 101-652 (eff. Jan 1, 2023), the Generally Assembly amended article 110 of the Code to significantly overhaul Illinois' approach to pretrial release and detention. Under the new system, all defendants—regardless of the alleged offense or offenses— are presumed to be eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022). However, upon the State's filing of verified petition, pretrial release may be denied in certain circumstances. *Id.*

¶ 11    Relevant here, the circuit court may deny pretrial release to a defendant charged with a non-probationable AUUW offense if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed the offense; (2) the defendant's release poses a real and present threat to the safety of any person or the community, based on specific articulable facts of the case; and (3) no condition or combination of conditions

of release can mitigate the danger the defendant presents to the community. 725 ILCS 5/110-6.1(a)(1), (e)(1-3) (West 2022).

¶ 12    Defendant does not dispute that he is charged with a non-probationable AUUW offense. However, he contends that the State failed to carry its burden of proof in regard to each of the other three requirements described above. We will address each point in turn.

¶ 13    Before proceeding, however, we must set out the standard of review. Prior to the recent amendments to the Code, this court reviewed bail appeals pursuant to Illinois Supreme Court Rule 604(c) (eff. July 1, 2017) for an abuse of the circuit court's discretion. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. Under the abuse of discretion standard, the circuit court's decision will be reversed only where it was arbitrary, fanciful, or so unreasonable that no reasonable person would agree with it. *Id.*

¶ 14    The amended Code itself does not specify the proper standard of review, and different districts of our court, indeed, even different divisions here in the First District have differed on the correct standard of review. See *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8 (court's factual findings are not overturned unless against the manifest weight of the evidence, but "ultimate decision" whether to deny pretrial release is reviewed for abuse of discretion); *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24 (reviewing factual findings under the manifest weight standard); *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19 (recognizing the split in authority but concluding the outcome would be the same regardless of the standard of review); *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 (court's determination as to whether State made showings by clear and convincing evidence is reviewed under manifest weight standard); *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying abuse of discretion); *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (abuse of discretion); *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10 (applying

manifest weight standard on whether State carried its burden of proof, but abuse of discretion as to the court's ultimate decision whether to deny pretrial release). Here, the parties agree that the circuit court's decision to deny pretrial release should be reviewed for abuse of discretion. We need not belabor the point, for on these facts, our decision would be the same regardless of which standard of review we apply.

¶ 15    Turning to the merits, defendant first argues that the court abused its discretion in finding that the State proved by clear and convincing evidence that the proof was evident or the presumption great that he committed the charged offense.

¶ 16    As charged here, a person commits the offense of AUUW when he possesses a firearm on his person or in a vehicle without having first been issued a valid Firearm Owners Identification Card or Concealed Carry License. 720 ILCS 5/24-1.6 (West 2022). In this case, Defendant challenges only the element of possession.

¶ 17    Possession of a firearm can be actual or constructive. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. Because defendant was not found in actual possession of the revolver, the State was required to prove constructive possession. *Id.* Constructive possession is established by showing that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area in which the firearm was found. *Id.* ¶ 22.

¶ 18    In our analysis, we are mindful that the State need not prove the charges beyond a reasonable doubt at this stage. "Clear and convincing evidence" requires more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *Bradford*, 2023 IL App (1st) 231785, ¶ 32. We conclude that the State has met its burden here. The State's proffer established that the revolver in question was recovered from the driver's side floorboard of a vehicle that defendant had been driving just moments earlier. Thus, the firearm was found in a

location in view of and most naturally accessible to defendant. Additionally, the circuit court was entitled to consider evidence that defendant fled the scene of the accident as consciousness of guilt. *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64. This is sufficient evidence from which to infer defendant's constructive possession. *People v. Hilson*, 2023 IL App (5th) 220047, ¶ 59.

¶ 19    Defendant does not necessarily contest that, had he been the sole occupant of the vehicle, the facts give rise to an inference of constructive possession. However, defendant submits that the presence of his passenger prevented the State from establishing constructive possession. Specifically, he argues that "[t]he revolver could have been the passenger's gun, placed on the floorboard after he accident." This argument is best left for trial.  As a matter of law, it is well-established that the presence of others in a vehicle where a firearm was found does not necessarily preclude a finding that the defendant constructively possessed that firearm. *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009). At least at this juncture, the circuit court was not required to elevate the possibility that the gun was planted over the reasonable inference that the gun belonged to the driver, defendant. Thus, we find no abuse of discretion.

¶ 20    Defendant next argues that the circuit court erred in determining that he posed a real and present threat to the community. According to defendant, the court did not base its decision on specific, articulable facts of the case, but rather relied solely on the other AUUW cases that defendant had pending. However, the record belies defendant's position. In its oral rulings at the conclusion of the detention hearing, the court explained to defense counsel that its finding of dangerousness was based on the evidence that:

> "there was a revolver in the car that he fled from, that he ha[d] a passenger who [he] left, and that when the police do the protective pat-down after they canvass the area and find

him, they find a Glock magazine on him and take that along with his history and having

two pending gun cases at the same time."

This, said the court, "amounts to dangerousness to the community." Similarly, the "dangerousness" section of the court's detention order cites, in addition to the pending AUUW cases, that defendant "was arrested after a car accident with a revolver found on the scene and a pat down which revealed a magazine[.]"

¶ 21    This reasoning comports with the Code, which allows the court to consider, among many other factors, the nature and circumstances of the alleged offense, whether the defendant is known to possess or have access to weapons, and whether the defendant was on pretrial release for other cases at the time of his arrest. 725 ILCS 5/110-6.1(g)(1-9) (West 2022). For all the reasons identified by the circuit court, we cannot say the court abused its discretion in finding that defendant posed a danger to the community.

¶ 22    Finally, defendant argues that the court abused its discretion in finding that no condition or combination of conditions on release would mitigate the danger he posed to the community. In particular, defendant notes that the Pretrial Services public safety assessment recommended his release on "Pretrial Supervision Level 1." Defendant also contends that the court failed to adequately explain why electronic monitoring (which defendant requested) would have been insufficient to mitigate the danger to the community.

¶ 23    We disagree. First, the Code does not require the court to rely on risk assessments when denying pretrial release or setting release conditions. 725 ILCS 5/110-6.4 (West 2022) (risk assessment tools can "assist" the court in determining whether the defendant poses a real and present safety threat). Second, the assessment is not entirely helpful to defendant. Defendant scored a 4 out 6 on the "New Criminal Activity Scale" and a 2 out of 6 on the "Failure to Appear

Scale," though the latter apparently did not consider his five failures to appear in other cases. In any event, as the circuit court recognized, defendant's three arrests for AUUW in the span of about 17 months evince an unwillingness or inability to comply with release conditions, specifically with respect to illegally carrying a firearm. Indeed, defendant has already twice violated the terms of his release by being arrested for AUUW. Under these circumstances, we cannot say that the trial court abused its discretion in determining that electronic monitoring would be insufficient to protect the public.

¶ 24                                III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court.

¶ 26    Affirmed.